IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUS LEMUS

     Plaintiff,

                               3:10-cv-01071-PK

                               AMENDED FINDINGS
                               AND RECOMMENDATION

TIMBERLAND APARTMENTS,
L.L.C.,et al.
               Defendants.

_____

PAPAK, Judge:

     Plaintiff Jesus Lemus brought this action to recover unpaid wages arising out of his

alleged joint employment as a construction worker by defendants Timberland Apartments, LLC

("Timberland" or "Timberland Apartments"), W.R. Townhomes F, LLC ("WR Townhomes F"),

Polygon Northwest Company LLC ("Polygon Northwest"), J.C. Builders, Inc. ("JC Builders"),

and Olympic Framing, LLC ("Olympic Framing").[1]  Lemus asserted violations of the Fair Labor

_____

[1] Defendants Timberland Apartments and WR Townhomes F were two single-purpose
entities created to serve as the developer/general contractor of the two projects at issue in this
case, the Timberland Apartments and the WR Townhomes F, sometimes called "Urban Flats."
Defendant JC Builders was a framing subcontractor hired by the two entities and Olympic
Framing is JC Builders' successor in interest.

Standards Act, 29 U.S.C. § 206(a)(1), 207(a)(1), and several Oregon wage laws, Or. Rev. Stat. §
653.025, 653.261, and 652.150, against all defendants as well as breach of contract against JC
Builders. However, Lemus dismissed his claims against JC Builders and Olympic Framing after
reaching a settlement with those parties, leaving only the federal and state wage law claims.

Both parties moved for summary judgment on the issue of whether Lemus was jointly
employed. Lemus urged the court to view the Polgyon family of companies as single enterprise
consisting of a number of complexly interrelated management entities facilitating property
development and single-purpose entities pursuing individual property development projects, all
of which were directed by the same individuals. Although Lemus worked directly for JC
Builders, a framing subcontractor, he argued that Polygon was also his joint employer under the
broad statutory definition of that term in the FLSA. In addition, Lemus argued that he worked at
two construction sites owned and managed by the Polygon family of companies, the Timberland
Apartments site and the WR Townhomes F site. Consistent with his theory that the Polygon
companies worked in concert as a single enterprise and jointly employed him, Lemus sought
leave to amend his complaint to add as defendants two additional Polygon entities– one
responsible for employing staff and the other for making payments– and to remove as a
defendant Polygon Northwest, which was merely an entity designed to protect Polygon's brand
name. Lemus feared that without adding these parties as defendants, he would not be able to
demonstrate the full scope of Polygon's conduct indicating its status as a joint employer. During
oral argument, defendants acknowledged the complex, interconnected nature of the Polygon
companies and stipulated that for all purposes relevant to this suit, the individuals associated
with Polygon acted solely as representative agents for Timberland Apartments and WR

Page 2 - AMENDED FINDINGS AND RECOMMENDATION

Townhomes F, the two entities responsible for the developments where Lemus purportedly worked. Accordingly, the court denied Lemus' motion to amend to add new defendants, but permitted Lemus to drop Polygon Northwest from the case.

On the merits of the summary judgment motions, the court determined that because there was no genuine dispute that Lemus worked only at the Timberland Apartments development, summary judgment should be granted in favor of WR Townhomes F. (#98.) However, the court recommended granting summary judgment in favor of Lemus as to defendant Timberland Apartments, determining that Timberland Apartments jointly employed Lemus with JC Builders. *Id.* The court therefore recommended a judgment in favor of Lemus for the balance of his unpaid minimum, overtime, and penalty wages. *Id.* The district court adopted this court's recommendations. (#101.)

Now before the court are two motions for attorney fees. Lemus moves for attorney fees and costs (#102), including fees in the amount of $78,918.84 and costs in the amount of $350, pursuant to 29 U.S.C. § 216(b), Or. Rev. Stat. § 652.200, and Or. Rev. Stat. § 653.055(4). Defendants WR Townhomes and Polygon Northwest also move for attorney fees (#107) in the amount of $47,201.21 as prevailing parties under Or. Rev. Stat. § 653.055(4). For the reasons described below, defendants' motion should be granted in part and denied in part and Lemus' motion should be granted in part and denied in part.

## DISCUSSION

I.      Lemus' Motion for Attorney Fees and Costs

      A.      Statutory Authorization for Attorney Fees

            1.      Oregon Law Claims

Page 3 - AMENDED FINDINGS AND RECOMMENDATION

As a threshold matter, there is considerable dispute over which Oregon statute(s) authorize attorney fees in this case on Lemus' Oregon law claims.[2] Lemus seeks fees under two different statutes. First, he cites Or. Rev. Stat. § 652.200(2), which provides for a mandatory award of reasonable attorney fees to an employee in "any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable," so long as the employee has not willfully violated the employment contract or the plaintiff's attorney has not unreasonably failed to give written notice of the wage claim to the employer before filing the action. Lemus also relies on Or. Rev. Stat. § 653.055(4), which allows, but does not require, the court to award reasonable attorney fees to "the prevailing party in any action brought by an employee" under Section 653.055, which includes actions under Or. Rev. Stat. §§ 653.010 to 653.261. Defendants contend, however, that because Lemus only brings suit for minimum wage violations under Or. Rev. Stat. 653.025, overtime wage violations under Or. Rev. Stat. § 653.261, and civil penalties under Or. Rev. Stat. 652.150, the attorney fee section for wrongfully withheld wages– Or. Rev. Stat. 652.200(2)– does not apply to Lemus' claims.

Defendants' argument is unpersuasive. Oregon courts broadly construe the term "wages" in Or. Rev. Stat. § 652.200(2) to mean "any compensation for an employe[e]'s services," in light of the legislative policy of assisting employees in collecting compensation due and discouraging employers from using their superior economic position to dissuade employees from collecting compensation. *Kantor v. Boise Cascade Corp.*, 75 Or.App. 698, 709, 708 P.2d 356 (1985).

---

[2] There is no dispute that 29 U.S.C. § 216(b) authorizes attorney fees on Lemus' FLSA claims.

Moreover, the term "wages" in Section 652.200(2) is intended to encompass penalty wages provided by Or. Rev. Stat § 652.150. *Wyatt v. Body Imaging, P.C.*, 163 Or.App. 526, 534, 989 P.2d 36 (1999). Here, the court found Timberland Apartments liable for violations of the minimum wage statute, Or. Rev. Stat. 653.025, and the overtime wage statute, Or. Rev. Stat. § 653.261, and consequently awarded civil penalties provided in Or. Rev. Stat. § 652.150. (#99); Or. Rev. Stat. § 653.055(1)(b) (providing civil penalties under Or. Rev. Stat. § 652.150 whenever an employer is found liable for paying less than the full amount of wages to which an employee is entitled under minimum and overtime wage statutes, among others). Thus, on the basis of recovering penalty wages alone, Lemus is entitled to seek mandatory attorney fees under Or. Rev. Stat. § 652.200(2). In addition, defendants concede that Lemus is authorized to seek permissive attorney fees under § 653.055(4).

### 2.    Federal Law Claims

Under the FLSA, Lemus is entitled to a mandatory award of reasonable attorney's fees and costs because this court found Timberland Apartments violated FLSA minimum wage and overtime provisions. *See* 29 U.S.C. § 216(b).

### B.    Attorney Fee Award

Because both Oregon law and federal law provide for mandatory attorney fee awards, the court is faced with both the Oregon and federal standards for determining the amount of such an award. On Lemus' motion for fees, the parties analyze the reasonableness of fees under the federal standard, and I do the same, acknowledging that Oregon law may provide other relevant factors to consider. *See, e.g., Victorio v. Stahlbush Island Farms, Inc.*, No. 10–6061–AA, 2012 WL 487987, at *1 (D. Or. Feb. 10, 2012) (following federal standard to determine appropriate

fee but also referencing Or. Rev. Stat. § 20.075 in deciding motion for attorney fee award in suit for FLSA and Oregon law violations).

Determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir .2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Courts may also consider other factors when determining whether to reduce or enhance the lodestar figure, including whether the lodestar figure reflects an attorney's true market value or whether the case involved an "extraordinary outlay of expenses" and protracted litigation. *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1674 (2010); *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The party seeking an award of fees bears the burden of supporting the hourly rates claimed and documenting the appropriate number of hours worked. *McCown*, 565 F.3d at 1102.

Here, Lemus seeks compensation for work by three different attorneys: David Henretty, D. Michael Dale, and Arthur Schmidt. Specifically, Lemus seeks fees for 169.7 hours of Henretty's time at a rate of $275 per hour totaling $46,667.50, 68.8 hours of Dale's time at a rate of $360 per hour totaling $24,768, and 7.9 hours of Schmidt's time at a rate of $350 per hour totaling $2,765. Thus, Lemus' total fee request is $74,200.50.

      1.    **Reasonable Rate**

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly
> rate. . . . The fee applicant has the burden of producing satisfactory evidence, in
> addition to the affidavits of its counsel, that the requested rates are in line with
> those prevailing in the community for similar services of lawyers of reasonably
> comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987) (citing *Blum v. Stenson*,

465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984)).   This court's usual method to estimate a

reasonably hourly rate is to take the median hourly rates for legal services charged by Portland-

area attorneys with similar work experience, as determined by the Oregon State Bar 2007

Economic Survey of 2006 rates, and then adjust those rates for inflation in order to estimate the

corresponding rates prevalent in the Portland legal community when the attorneys performed

their services.

Based on this methodology, I find that Lemus' requested rates for attorneys Henretty,

Dale, and Schmidt are all reasonable. Henretty has over 11 years of experience and the 2007

median hourly rate for a Portland lawyer with 10-12 years of experience is $250.  The urban

consumer price index for the Western States in 2006 was 205.7, in 2009 was 218.822, in 2010

was 221.203, and in 2011 was 227.485.  (Henretty Decl., #104, Ex. 2.)  Thus, the inflation-

adjusted median rate for an attorney of Henretty's experience was approximately $266 per hour

in 2009, $269 per hour in 2010, and $276 per hour in 2011.[3]  Henretty performed the vast

majority of his work on this case in 2011, with only a few hours billed in 2009 and 2010.

---

[3] Defendants argue that Lemus misapplies the CPI inflation adjustment, but I find Lemus'
calculations to be accurate.  Defendants also contend that the average, rather than the median,
rate from the 2007 survey should be used.  I disagree.  Finally, defendants challenge Lemus'
contention that Henretty's Spanish language skills are unique.  Although Henretty does not
declare that Lemus would have had difficulty obtaining a Spanish-speaking attorney, the added
value and relative rarity of a Spanish-speaking attorney is self-evident, since Spanish language
skills are not a pre-requisite for legal competence or bar admission.

Page 7 - AMENDED FINDINGS AND RECOMMENDATION

(Henretty Decl., #104, Ex. 3.) Moreover, Henretty is fluent in Spanish, which was a crucial skill in this case where plaintiff was a monolingual Spanish speaker. Therefore, I find that Henretty's requested hourly rate of $275 is reasonable.

Dale has 36 years of experience practicing law and the 2007 median hourly rate for a Portland lawyer with over 30 years of experience is $300, with a 75th percentile rate of $350. Adjusted for inflation, that median rate would be $323 per hour in 2010, and $332 per hour in 2011, while the 75th percentile rate would be $376 in 2010 and $387 in 2011.[4] Dale worked some hours on this case in 2010, with the majority occurring in 2011. Dale's requested rate of $360 is reasonable even though it exceeds the adjusted median survey rates, in light of his specialized experience with joint employment cases under the FLSA. Dale was one of the lead appellate counsel in *Torres-Lopez*, 111 F.3d 633 (9th Cir. 1997), the case establishing the relevant standard for joint employment that this court applied in its merits analysis. (Dale Decl., #106, ¶5.) Moreover, Dale is an authority on the employment rights of low-wage workers, having led numerous organizations serving that population and litigating cases involving workers' employment rights in various federal courts of appeal. *Id.* at ¶6. Like Henretty, Dale is also a fluent Spanish speaker. *Id.* at ¶7. All of these factors are not adequately represented in the inflation-adjusted median rate for an attorney of Dale's experience.

Similarly, Lemus presents sufficient evidence that Schmidt's rate of $350 is also reasonable. Schmidt has much experience in employment law and I take judicial notices that he

---

[4] Defendant challenges Lemus' use of the Portland-area rates for Dale's compensation, since Dale's office is located in Washington County. Dale, however, declares that he rarely appears in Washington County, and instead practices about half the time out of offices in Portland and also conducts a practice in federal district courts and Circuit courts throughout the country. Accordingly, I accept Lemus' use of the Portland-area survey rates.

Page 8 - AMENDED FINDINGS AND RECOMMENDATION

was also appellate council in *Torres-Lopez* along with Dale. These factors justify an hourly rate for work in 2011 slightly higher than the median inflation-adjusted rate for someone of Schmidt's experience in the Portland area.

### 2. Hours Reasonably Expended

Defendants challenge the number of hours expended by Lemus' attorneys on a number of grounds. First, defendants contend that many billings are either vague, duplicative, involve administrative tasks, qualify as block billing, or involve a moot court solely for attorney training purposes. I first discuss these objections generally and then as applied to each attorney's billing record.

### a. Inadequately Specified Tasks

Because it is the fee petitioner's burden to demonstrate that the compensation sought is for hours reasonably related to the litigation of successful claims and claims closely related to successful claims, *see, e.g., Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989), failure to specify the subject of work performed results in the exclusion from the lodestar calculation of any time spent in tasks whose relatedness to such claims cannot be determined from the supporting time entries. *See, e.g. Frevach v. Multnomah County*, No. CV-99-1295-HU, 2001 U.S. Dist. LEXIS 22255, at *45 (D. Or. Dec. 18, 2001).

Here, defendants identify a number of entries in Dale's billing records which are purportedly inadequately specified, including entries lacking a verb, *i.e.* "Notice of Filing of Rule 26 Agreement," entries that refer to a document somewhat ambiguously, *i.e.* "Review final reply," and entries where it is unclear whether Dale merely downloaded or also reviewed a document, *i.e.* "Download; docket order changing argument date." It is clear from Dale's billing

records that the references to various notices are merely reviews of those notices, each associated with 0.1 hours of time. These are adequately specified. I also do not find the challenged entries to be so ambiguous that the court cannot determine whether they relate to the successful claims. As for the entries including the word "download," I discuss below whether such activities are properly included in Lemus' fee request. Accordingly, none of Dale's entries should be excluded from the loadstar calculation for inadequately specified tasks.

Defendants also object to a number of Henretty's billings as vague, either because they ambiguously refer to "client" or also refer to other "potential plaintiffs." Henretty declares that the term "client" refers only to Lemus, not Lemus' co-plaintiff who was dismissed early in this case or other potential plaintiffs. Henretty's consistent use of "client" is reasonably clear and none of those entries should be excluded. Henretty also states although two entries reference meetings with "client" and "potential plaintiffs," those entries only claim the portion of the attorney's time specifically relating to interactions with Lemus. This formulation, although slightly more unusual, is also a reasonable method of attributing attorney time spent on a single client's matter while also memorializing the context of that work. Thus, none of Henretty's entries should be excluded from the loadstar calculation on this ground either.

### b.    Redundant or Duplicative Expenditures of Time

Defendants challenge Dale's entry for attendance at the summary judgment hearing, contending that his presence was unnecessary since Henretty made the vast majority of argument, with the exception of a few remarks by Dale at the court's invitation. The courts of this district routinely exclude from the lodestar calculation any time entries indicating that more than one lawyer performed the same task. *See, e.g., Taylor v. Albina Cmty. Bank*, No. CV-00-1089-ST,

Page 10 - AMENDED FINDINGS AND RECOMMENDATION

2002 US Dist LEXIS 25580, *11-12 (D. Or. October 2, 2002). However, courts of this district

have also explicitly stated that good billing judgment allows billing of two attorneys to attend

oral argument:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot
> expect to shift the cost of any redundancies to its opponent. Instead it can only
> shift the reasonable attorney fee expended. A fee that is "not excessive" may still
> be unreasonable. When attorneys hold a telephone or personal conference, good
> "billing judgment" mandates that only one attorney should bill that conference to
> the client, not both attorneys. The same good "billing judgment" requires
> attorneys not to bill for more than two attorneys to review pleadings or to attend
> oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 US Dist LEXIS 7763, *14 (D.

Or. Feb. 8, 2001). Indeed, Judge Redden held that it was reasonable for two attorneys to appear

on behalf of a single client for oral argument on several motions. *Atl. Recording Corp. v.*

*Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *4 (D. Or. June 24, 2008). Therefore, the

court should not exclude the 1.7 hours charged for Dale's attendance at summary judgment and

motion to amend oral argument.

### c.    Clerical or Administrative Tasks

Costs associated with clerical tasks are typically considered overhead expenses reflected

in an attorney's hourly billing rate, and are not properly reimbursable. *See Missouri v. Jenkins*,

491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a

paralegal [or lawyer's] rate, regardless of who performs them . . . [the] dollar value [of a clerical

task] is not enhanced just because a lawyer does it") (citation omitted). Time entries reflecting

the performance of clerical tasks should therefore be deducted from the totals listed in the fee

petition. *See Frevach Land Co. v. Multnomah County*, No. CV-99-1295-HU, 2001 US Dist

LEXIS 22255, *37 (D. Or. December 18, 2001) (inappropriate according to practices "prevailing

. . . in this community [*i.e.*, Multnomah County] to bill a client, or to seek fees under a

fee-shifting statute, for purely secretarial tasks").   Several courts in this district have deemed

downloading to be a clerical task and excluded time associated with downloading from attorney

fees. *Moore v. Comm'r Soc. Sec. Admin.*, No. 3:09–cv–06034–KI, 2011 WL 2457910, at *2 (D.

Or. June 16, 2011); *Costa v. Astrue*, No. CV-09-6048-HU, 2011 WL 221837, at *2 (D. Or. Jan.

18, 2011).   Likewise, calendaring, scheduling, and docketing are not compensable as attorney

fees. *HRPT Props. Trust v. Lingle*, 775 F. Supp. 2d 1225, 1241 (D. Hawaii 2011); *Campbell v.*

*Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010).   Accordingly, the

court should exclude from the loadstar calculation the following entries for administrative tasks:

9/12/11, .3 hours (Dale)

12/20/12, .1 hour (Dale)

4/4/11, .3 hours (Dale)

5/25/11, .1 hour (Dale)

6/8/11, .2 hour (Dale)

7/13/11, .1 hour (Dale)

9/23/11, .1 hour (Dale)

10/18/11, .3 hour (Dale)

10/20/11, .2 hour (Dale)

### d.    Block Billing

Defendants also challenge many entries by Henretty and Dale as impermissible block

billing.   In this district, block billing is "any single time entry of three or more hours containing

Page 12 - AMENDED FINDINGS AND RECOMMENDATION

four or more tasks, or containing only two tasks where one of the two tasks could have taken anywhere from a small to a substantial period of time." *Orme v. Burlington Coat Factory of Or.*, *LLC*, No. CV 07-859-MO, 2010 WL 1838740, at *6 n.3 (D. Or. May 3, 2010). Only one of Dale's entries potentially meets this definition, a 3.8 hour entry from 10/20/2011 reading, "Review and revise draft response to Ds' MSJ; email to Henretty." It is unlikely that Dale's email to Henretty concerning the revisions to Henretty's brief could have taken a substantial amount of time. Therefore, this entry is not a block billing and should be compensable. Furthermore, none of the entries identified by defendants in Henretty's billing records meet the definition of block billing used in this district.

### e.    Moot Court

Next, defendants challenge entries relating to a moot court Lemus' counsel held to prepare for oral argument, contending that time spent on attorney training should be excluded. Courts refuse to draw a firm line concerning the reasonableness of attorney fees for mock trials, moot courts, and other preparation techniques, instead analyzing the reasonableness in the context of the particular cases. *See United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.3d 403, 407 (9th Cir. 1990) (finding that a single moot court trial run could be included in a fee award so long as the number of hours spent was reasonable); *Charles v. Daley*, 846 F.2d 1057, 1076-77 (7th Cir. 1988) (allowing fees for time spent on "mock oral arguments" but reducing fees for travel costs associated with in-person moot courts on both the east and west coasts); *Finkelstein v. Bergna,* 804 F.Supp. 1235, 1239 (N.D.Cal.1992) (denying a fee award because the lawyers' timing of second mock trial activities was imprudent, as the issue was largely moot); *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, No. CV. 00-1694-A, 2003 WL

Page 13 - AMENDED FINDINGS AND RECOMMENDATION

23715982, at *8 (D. Or. Oct. 27, 2003) (collecting cases where moot courts have been found compensable). Here, I find that Lemus' fee request for his attorneys' time in preparing for and conducting a moot court is reasonable, especially considering the fact that Lemus spent significantly less time preparing for oral argument overall than defendants' counsel did, even including plaintiff's moot court preparations.

f.    <strong>Unnecessary or Unrelated Entries</strong>

Finally, defendants object to a number of Henretty's billings that are arguably unrelated to the claims against Timberland Apartments where Lemus prevailed. In particular, defendants challenge entries concerning discovery relating to JC Builders, the subcontractor that hired Lemus, and entries relating to what defendants call Lemus' "failed" motion to amend, including the deposition of Chris Eadon about the structure and relationship of the various Polygon entities. Reasonable hours include only those expended in furtherance of successful claims, or of claims closely related to successful claims. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Claims are closely related for fee-shifting purposes if they "involve a common core of facts *or are based on related legal theories.*" *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis original). Here, it is undeniable that discovery concerning JC Builders revealed facts that were integral to Lemus' joint employment theory of liability, particularly because the court considered many facets of JC Builders' payroll, management, and contract negotiations in ultimately finding a joint employment relationship. Thus, entries related to JC Builders are compensable.

Moreover, even though the court eventually denied Lemus' motion to amend, through it Lemus secured defendants' vital stipulation that all Polygon employees were acting solely as

Page 14 - AMENDED FINDINGS AND RECOMMENDATION

agents for the respective single-purpose entities. That concession allowed Lemus to present

evidence that Timberland Apartments, for example, provided building materials for JC Builders,

limited JC Builders' working hours, paid JC Builders early so it could meet its payroll, and

forced JC Builders to move from one building to another during the workday. All of these facts

helped Lemus demonstrate the existence a joint employment relationship between Timberland

Apartments and JC Builders. Accordingly, hours spent pursuing the motion to dismiss and

Eadon's declaration furthered Lemus' successful claims and should not be excluded from the

loadstar calculation.

### g.    Summary of Reductions

In light of the above discussion, 1.7 hours of entries by Dale should be excluded, totaling

$612 in requested fees. Accordingly, Lemus' fee request of $78,918.84 (including non-taxable

costs), should be reduced to $78,306.84. Lemus is also entitled to $350 of taxable costs.

## II.    Polgyon Northwest and WR Townhomes F's Motion

### A.    Prevailing Party

Polygon Northwest and WR Townhomes F move for an award of $47,201.21 in attorney

fees as prevailing parties pursuant to Or. Rev. Stat. § 653.055(4), amounting to two-thirds of

defendants' total attorney fees incurred, less fees for time concerning the cross-claims of JC

Builders and Olympic Framing.

Or. Rev. Stat. § 653.055(4) provides that "[t]he court may award reasonable attorney fees

to the prevailing party in any action brought by an employee under this section."[5] Or. Rev. Stat. §

---

[5] Section 653.055 references a span of sections within Chapter 653, Or. Rev. Stat. §§
653.010 to 653.261, which includes two of the sections that form the basis for Lemus' claims.
Thus, Section 653.055(4) is clearly applicable to defendants' request for attorney fees.

653.055 is unique in Oregon wage law because, unlike other attorney fee statutes in Oregon wage and hour laws which either explicitly prohibit an employer from seeking attorney fees or place a higher burden on an employer seeking fees, Or. Rev. Stat. § 653.055 makes no distinction between employees and employers regarding attorney fees. *See* Or. Rev. Stat. § 652.200 (The court shall award attorneys fees to a prevailing plaintiff/employee); Or. Rev. Stat. § 652.230 (The court may award reasonable attorney fees to a prevailing defendant/employer but only "if the court determines that the plaintiff had no objectively reasonable basis for asserting a claim.") The term "prevailing party" as used in Or. Rev. Stat. § 653.055(4) is further defined in Oregon law: "the prevailing party is the party who receives a favorable judgment or arbitration award on the claim." Or. Rev. Stat. § 20.077(2); *Rogers v. RGIS, LLP*, 229 Or. App. 580, 584-585, 213 P.3d 583 (2009) (referring to Or. Rev. Stat. § 20.077(1) and (2) to determine whether defendant employer was the prevailing party on plaintiff employee's claims falling within the ambit of Or. Rev. Stat. § 653.055).

Lemus first argues that neither Polygon Northwest nor WR Townhomes F were the prevailing party, although Lemus only provides reasons that Polygon Northwest did not "prevail," without addressing WR Townhomes F as a separate entity. I agree with Lemus that Polygon Northwest is not the prevailing party on any of Lemus' claims. Lemus achieved a money judgment on his claims against Timberland Apartments, gaining his withheld minimum and overtime wages, as well as statutory penalties. By contrast, the court dismissed Polygon Northwest without prejudice[6] at Lemus' request, after Lemus determined through discovery that

---

[6] Defendants, however, argue that the court's dismissal was, in effect, with prejudice, based on its findings that only Timberland Apartments was liable.

it was merely an entity whose role was to protect the Polygon brand name. Lemus urges the

court to consider the unusual circumstances of this case, where he had considerable difficulty at

the outset in determining which of the many interrelated entities could be held accountable as a

joint employer.[7]  While the case Lemus cites is not binding on my interpretation of "prevailing

party" under the particular Oregon statutes at issue here, the reasoning expressed is certainly

persuasive.  It would defy both the plain meaning of the word "prevailing" and the remedial

purpose of Oregon's wage laws to deem Polygon Northwest the prevailing party merely because

Lemus voluntarily dismissed it after learning it was a shell company with a similar name but

ultimately unrelated to the conduct at issue.

    By contrast, I agree with defendants that WR Townhomes F is the prevailing party on the

claims asserted by Lemus against it.  The court granted summary judgment for WR Townhomes

F on Lemus' claims.  Because WR Townhomes F was "the party who receives a favorable

judgment or arbitration award" on the claims between it and Lemus, it is considered the

prevailing party on those claims.  Or. Rev. Stat. § 20.077(2).  I therefore analyze whether and to

---

[7] Lemus cites an Alabama district court case recognizing that a plaintiff can achieve
success by recovering against one out of many defendants, especially in circumstances similar to
this one where defendants are interrelated entities. *See Hall v. Lowder Realty Co.*, 263 F. Supp.
2d 1352, 1361 (M.D. Ala. 2003) ("[T]hat she prevailed against only one defendant out of 12 is
misleading. The reason she sued (and indeed, had to sue) so many defendants is because of the
extremely complex corporate and personal interrelationship among the defendants; while these
defendants were separate entities, they were interrelated.  Throughout the pretrial and trial
proceedings, it was quite difficult to discern which defendant was responsible for what and
accountable to what or whom in the various real-estate transactions;  the effort to pin down
which was the proper defendant was often a shell game.  In short, Hall needed to succeed against
only one defendant (which she did), or perhaps two, for complete success on a claim.  She was
not trying to hold all the defendants accountable;  she was instead trying to figure out, from the
defendants' complex interrelationship, which one should be held accountable if she prevailed.")

Page 17 - AMENDED FINDINGS AND RECOMMENDATION

what extent attorney fees should be granted to WR Townhomes F under the factors set forth in

Or. Rev. Stat. § 20.075.

### B.    Discretionary Attorney Fees

In deciding whether to award attorney fees that are authorized but not mandated by

Oregon statute, the court must consider the following factors:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1).  The application of these factors indicates that WR Townhomes is

entitled to an award of attorney fees.

The first factor is neutral, as neither Lemus nor WR Townhomes F exhibited reckless,

willful, or malicious conduct in the transactions or occurrences that gave rise to the litigation.

The second, fifth and sixth factors favor awarding some amount of attorney fees to WR

Townhomes F, since Lemus unreasonably continued to pursue his claims against WR

Townhomes F at summary judgment, despite submitting a declaration attesting that he only

worked at Timberland Apartments. While the court understands Lemus had difficulty

distinguishing and identifying the appropriate multi-use Polygon entities to sue, Lemus cannot

adequately explain his failure to voluntarily dismiss WR Townhomes F when it became clear that

Lemus never worked at that job site.

The third and fourth factors also favor awarding some fees to WR Townhomes F. Lemus

contends that in potential joint employment situations such as this one, the facts concerning

where any given employee worked are in possession of the putative employer, especially when

that employer possesses a complicated and opaque business structure like the Polgyon family of

companies. Thus, Lemus argues, awarding fees to WR Townhomes F would deter an employer

from pursuing unpaid wage claims where the identity of the potential joint employer is obscured

by a thicket of business structures, which can only be unraveled during discovery. I agree with

Lemus up to a point. Even if it was not initially obvious where Lemus worked, that issue was

resolved once Lemus submitted his summary judgment declaration. Therefore, awarding a

limited amount of fees to WR Townhomes F to compensate it for its representation after that

turning point would only deter plaintiffs from persisting in claims against putative joint

defendants once it becomes clear that those claims were meritless, but would not deter plaintiffs

in the first instance from suing multiple defendants in joint employment circumstances to

discover which entities are truly joint employers.

Finally, the seventh factor is inapplicable, since the court did not award a prevailing party

fee.

Page 19 - AMENDED FINDINGS AND RECOMMENDATION

In sum, after considering the Or. Rev. Stat. § 20.075(1) factors, I find that it is appropriate to award some attorney fees to WR Townhomes F as the prevailing party, accounting for the unnecessary defense WR Townhomes F was forced to mount after it became obvious that Lemus never worked at the WR Townhomes F development.[8]

### C.    Amount of Attorney Fees

When discretionary attorney fees are to be awarded, the court must consider the following factors to determine the appropriate amount of such fees:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

---

[8] Although I am generally wary of the perverse incentives created by awarding any attorney fees to an employer defending against a low-value claim for unpaid wages, the Oregon legislature's adoption of Or. Rev. Stat. § 653.055(4) and a recent Oregon Court of Appeals decision applying that statute seem to endorse this practice. In *Rogers v. RGIS, LLP*, 229 Or. App. 580, 213 P.3d 583 (2009), plaintiff brought claims for unpaid overtime wages, minimum wages, and rest and meal break wages under Chapter 653, and late payment of final wages under Chapter 652 . *Id.* at 582. Plaintiff prevailed on late payment of wage claims under Chapter 652, obtaining a judgment for damages of $2,630, but defendant prevailed on all claims for unpaid wages under Chapter 653. *Id.* . The employee sought attorney fees under Or. Rev. Stat. 652.200(2) for its Chapter 652 claims, while the employer sought attorney fees under Or. Rev. Stat. § 653.055(4) as the prevailing party on plaintiff's Chapter 653 claims. The court awarded $880 in fees to plaintiff (amounting to one third of its damages, since plaintiff had a contingency fee agreement with its counsel) and a staggering $180,854 in attorney fees to defendant. *Id.* at 583-584. The Court of Appeal affirmed those awards, holding that defendant was the prevailing party under § 653.055(4) on the Chapter 653 claims and determining that the trial court did not abuse its discretion in awarding fees for defendant. *Id.* at 586. The Court of Appeals did not explicitly review the lower court's analysis of the appropriateness of discretionary fees under the § 20.075 factors, nor did it express any discomfort with the vast disparities in attorney fee awards and the potential deterrent effect on plaintiffs seeking to vindicate their rights under Oregon wage laws.

Page 20 - AMENDED FINDINGS AND RECOMMENDATION

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation, and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

Or. Rev. Stat. 20.075(2).

Lemus argues that WR Townhomes F's fee request is unreasonable.  Despite that Timberland Apartments, Polygon Northwest, and WR Townhomes F had an agreement to share equally in the cost of defending against Lemus' claims, Lemus points out that defendants' attorney billing records do not separate fees incurred for each defendant.  Moreover, Lemus contends that, aside from a paragraph or two in summary judgment briefing, there is no legal work uniquely attributable to the representation of WR Townhomes F.  Defendants admit that there was little attorney work exclusively benefitting WR Townhomes F.  But, by sharing defense counsel, WR Townhomes F argued that it avoided incurring substantially higher attorney fees.  That is, if WR Townhomes F had been independently represented, its attorney would have had to duplicate much of the work performed by other counsel, such as summary judgment briefing, yet all of that work would have been uniquely attributable to WR Townhome F's representation.  Thus, WR Townhomes argues that the court should not penalize its preference for efficiency by preventing it from recovering its portion of shared attorney fees.

These arguments go to the first factor in Or. Rev. Stat. 20.075(2).  Indeed, plaintiffs raise no arguments implicating the other factors and I find, upon independent review, that the only

Page 21 - AMENDED FINDINGS AND RECOMMENDATION

relevant issue here is the amount of defendants' overall attorney fees that are appropriately

allocated to WR Townhomes F.   Ultimately, I agree with WR Townhomes F that attorney fees

for tasks that were necessary for the representation of all defendants can generally be recovered,

according to the agreed-upon ratio of one-third for each defendant.  To find otherwise would

indeed penalize defendants for executing an efficient joint representation agreement.  However, I

limit WR Townhomes F's award in two other respects.

First, as I mentioned above, WR Townhomes F is only entitled to its portion of fees

incurred *after* Lemus unreasonably failed to voluntarily dismiss WR Townhomes F as a

defendant.  It is difficult for an employee in a joint employment situation to determine all the

relevant facts concerning where he worked, absent discovery.  There was some evidence here

suggesting that Lemus had been employed at both the Timberland Apartments and WR

Townhomes F job sites, which were literally across the street from each other.  Thus, attorney

fees attributable to representing WR Townhomes F after October 24, 2011, the date Lemus filed

his declaration that he only worked at Timberland Apartments, were necessitated only because

Lemus failed to diligently dismiss WR Townhomes F and should be generally be awarded.

Second, even among that subset of attorney fees, other exclusions are appropriate.  Two

entries on 11/17/11 for 3.9 hours and .3 hours pertain solely to preparation for oral argument on

Lemus' motion to amend, which did not involve WR Townhomes F.  (Poore Decl., #110, Ex. A,

at 49-50.)  These should therefore be excluded.  Similarly, several other entries reflect time spent

on the combined preparation for the motion for summary judgment and the motion to amend:

11/117/11 (.1 hour); 11/18/11 (4.9 hours); 11/21/11 (12.5 hours); and 11/22/11 (1.9 hours).  *Id.* at

50.  Since the motion to amend did not involve WR Townhomes F, each of these entries should

be reduced by one half, under the theory that only a portion of those hours were spent on activities necessary to represent WR Townhomes F on the *summary judgment* motion. Finally, three entries reflect attorney work concerning potential objections to this court's findings and recommendations: 12/22/11 (1.7 hours); 12/23/11 (.4 hours); and 12/23/11 (.1 hours). *Id.* at 51-52. These hours clearly were not necessary for representing WR Townhomes F, which prevailed at summary judgment, and they should be excluded as well.

Applying these exclusions, I calculate that defendants collectively incurred $15,750.30 in attorneys fees after October 24, 2011 for representation that equally involved all three defendants. WR Townhomes F's one-third share of those fees under the defendants' joint representation agreement is $5,250.09.

## CONCLUSION

For the reasons described above, Lemus' motion for attorney fees and costs (#102) should be granted in part and denied in part, and Lemus should be awarded $78,306.84 in attorney fees and $350 in taxable costs. Defendants' motion for attorney fees (#107) should be denied as to defendant Polygon Northwest and granted in part as to WR Townhomes F, which should be awarded $5,250.09 in attorney fees.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

//

//

Page 23 - AMENDED FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 26th day of April, 2012.

Honorable Paul Papak
United States Magistrate Judge